This is a case involving child support. The marriage began on September 2, 1998 and was dissolved on March 15, 2001. Reinecke, the judge of dissolution, said that the respondent, Keith Cameron, was to pay $1,000 per month for child support for all the children until the last child reached the age of emancipation, 18, or graduated from high school. It was adjusted in 2012 by Judge Gadlin. She reduced the amount to $958 per month because so many children had achieved emancipation at that point. But there was still some discussion about arrearages, and so all of the overpayment of the emancipation plan was dedicated towards the arrearages. In 2015, there was the third hearing about the amount of arrearages and the amount of the dispute over what was supposed to be paid for child support was listed as in addition to that. There had been a short hearing in front of the first judge, Judge Biola, and then another hearing in front of Judge Gadlin, another hearing in front of Judge Biola, and then this third one in front of Judge Brownlee. The parties agreed that before any interest accrued, the amount in dispute was $133,905. Everybody agrees that there were payments made to the State Disbursement Unit in the amount of $26,971.15. All of the money was supposed to be paid to the State Disbursement Unit, but the parties agreed early on that the respondent would have to ignore the flexibility. At the end of the day, almost $27,000 was paid to the State Disbursement Unit. The petitioner, when she first brought the claim, made an estimate. She had not kept records. She made an estimate of what she thought had been owed her. Her estimate was $61,037.20. The respondent then responded with payments of bank records and checks to his records, showing that he had paid $69,000.69. Obviously, I don't deal with money very often, but that's a point of concern. Of that $69,318, the petitioner accepted $49,929.50 as money that had been paid directly to her. She disputed the remaining $20,000 because it had not been paid directly to her. So, at the end of the day, when you subtract the $26,000 and the $40,000, almost $50,000, that she accepted from the admitted amount of the entry, what's in dispute is about $57,000 plus the merits. It was a lengthy hearing. It spanned 650 pages. Can I have a question about the mechanism? It was ordered to pay to the State Disbursement Unit, correct? Yes. In the divorce judgment? Yes. Okay, and yet the parties agreed to bypass that? Yes. Otherwise, there would be a record, a complete record, because those are presumably kept for a long, long time. Yes. And so both parties seem to, because they all want to adjust as opposed to follow the order, is that right? Yes. I 100% agree that everything would be 100 times easier had it been followed and paid to the State Disbursement Unit. And had that been accomplished, there would be no dispute. And obviously, the respondent or the ex-spouse, the ex-wife, was accepting of this situation for a period of time. So, I think she did. Because, because, because. But she didn't complain. She didn't bring any legal action to require that the State Disbursement Unit be used as the conduit, right? You know, I spoke over the beginning of your question. Could you say just the very beginning? Oh, yeah. Sorry. I mean, there's absolutely no prior legal action requiring conformance with the judgment in that the State Disbursement Unit be used as a conduit. Right? Correct. Correct. There was no complaint on her part until 2012. And that was just about money that was in the rivers, as opposed to the issue of the kind of case that this was. I don't want to correct you on the record, but I'm going to go back and look at the record itself. Because I think when the marriage was dissolved in 2001, there were agreement, the marital settlement agreement, required respondent to pay $1,000 per month directly to petitioner. That changed later in 2013, where there was a court order that required the payments to be made to the SDU. I could be mistaken, but I will check the record on that point. So it is correct that there were payments ordered through Child Support Disbursement Unit, but not originally. Your Honor, I believe I stand corrected. Thank you. Well, I'm not sure. I'll double check the record. I'll double check the record. Thank you. So we're really here talking about whether Drummond's decision on this was a correct amount. Is that right? Yes. And our position is that his determination, his ruling, that the respondent owed $20,819.57, was such an arbitrary finding, so capricious, that it would have been an offense to an abuse of discretion. It was simply not one of the numbers that was even on the table. The respondent said that he owes nothing, and the petitioner said that he owes $57,000 plus interest. And Judge Drummond came up with this number. When I asked him his specifics, he said no. He said, well, I have notes, but they're still there. If you look at the record, page 806, he says, am I going to give you the specifics? Well, no, I'm not. And if you don't like it, throw them out of the way. I'm just sitting here calling the court. You know, he refused to be specific. He later said that he didn't have, you know, fortunately, he didn't have to go through check by check. That's at the record, page 39. So Judge Drummond did not make a specific claim to the fact. And when asked, when pressed, he just refused. And then this number just came out of thin air. It doesn't make sense. It doesn't fit with any of the proceedings. There were hundreds of checks that were introduced. Many things were misused. You know, what payments was he allowed and what payments was he not allowed? I mean, there were payments today to respond to a mortgage, or a copy, or, you know, for an emancipated child. For college tuition for an emancipated child. What part of this was he accepting? What part was he denying? He owed it to the litigants to go through check by check and determine what he was allowing and what he was not allowing. Because that is the only way, then, that the petitioner can go back and calculate the interest. The interest is mandated by statute. It's, you know, that Judge Drummond apparently didn't like the idea of interest. It's really quite irrelevant. It's beyond his favor. Right? It wasn't that you said that the interest is a mandatory payment. And the only way it can possibly be calculated is if we check by check. We know which check the judge accepted and which check he didn't accept. Because it depends on the date of the payment or the date of the non-payment. All of those things go into the interest calculation. Weren't there some things that there was no obligation to pay for? Sure. I mean... So there was no obligation to pay for medical expenses. I mean, Drummond had kind of, there would be, you know, a split. Medical expenses would be split. Dental expenses would be split. But he had an obligation to pay $1,000 per month in child support. And he did not pay, even by his records, he did not pay $1,000 per month in child support. So then, you know, extracurricular and school expenses, that was, you know, in terms of what was being developed. Well, okay, fine. But which expenses here qualified for that? Which expenses, you know, in my view... So if some of those checks were arguably those types of expenses, there should have been credits, should there? Had they been made payable directly to her, to the wife? Yes. So the case law is quite clear that those payments need to be made directly to her so that, you know, whatever is in child support is made directly to her. And Justice Breyer so kindly pointed out. I mean, the order said the money needs to be paid to her. And the law is quite clear that the money has to be paid to her directly so that she has the discretion to determine how it's spent. Right? Otherwise, the husband or the ex-husband, you know, is calling the shot. And the law is quite clear that that's not the way it works. The money goes to her. I mean, in some circumstances, the courts have said, you can't just pay an adult child the arrearage because there was no agreement with the spouse to do that. But in this case, the father, these were payments like, I don't know, there was a car payment and some other things made. I know some were to minor, you know, some of the kids were minor. Some might have been to an adult child, but they were, you know, found, at least the judge found that they were with the knowledge and acceptance to do that by him. Because I don't think the case law is as clear as you say that it has to be a check made out to her. It just has to be something she agrees to, right? I mean, isn't that what the Borklin case says? My understanding is that the checks are to be made to her, but she specifically agrees. So the trouble we have here is the question actually kind of highlights my position. These are findings of fact. These are determinations that are to be made by the lower court. And this point is to review what the lower court found about that. I cannot find anything in the record where the lower court found, oh, there was an agreement that was not an agreement, right? They think that these payments were what he credited, what he didn't credit. But all of that is undetermined. All of that was in the hands of the trial court. And he did not develop his responsibility to make those determinations. Which is important in this case because of the timing of an arrearage in order to calculate the interest. Right. So, yes. So it's important in any case to make a finding of fact so that the case can go forward, so that it can be reviewed. In this case, we don't have a finding of fact, and then we can't get to the second step of such an arrearage. The whole thing is simply not finished. The judge pulled a number out of the air and said, well, I think this is fair. We're a court of equity. This is what I'm going to do. But it wasn't tied to the record. But it has come into court. They're entitled to have findings of fact. They're entitled to have their case determined. Not just, well, I think this is about right. The judge didn't do that. Is the court entitled to have a presentation of evidence that can make the court make these findings? I mean, what is the evidence? You're saying that it didn't make these findings. But you make findings based upon evidence that's presented in a court. In my opening brief, both the trial court's findings are the same. And the trial court said in a summary fashion, well, I looked at everything. I'm giving credit for extracurricular expenses and school expenses, and there's no difference. And when pressed to ask for something more specific, he said, well, I'm not going to do that. I'm not going to do, I didn't have to do check by check. I'm not going to do that. I think it's in common. It's the trial court's duty. That's why he's there, is to make those determinations case by case, check by check. So that the parties have had their day in court. So that there's a settlement of their dispute. Otherwise, it's just, you know, gone. This is all right. I'm going to go with it. It's generally speaking, not the way I've seen law conducted in this state. Well, based on this, I mean, when I went through the transcript of the father's testimony, and, you know, as he's testifying to laws, I mean, I came up with about the same as Judge Brunt, based on what he said, you know, on his lawyer. But, and I guess I'm struggling finding that he doesn't have the discretion to do that. And because he doesn't have to, you know, he pronounced, I'm giving him credit for these activities, and, you know, certain amounts. And I don't know that I find that he's absolutely required to make a factual finding on every item. You know, so I am struggling, not that I don't understand exactly what you're saying, but I don't know that we can say he is without authority to say these are, this is what I'm making. I'm not going to go check by check. I, you know. Your Honor, this goes back to your first question, your prior question. How do we determine the interest if he just goes on a, here's my number. Counsel, it's two minutes. Thank you. There's no way to determine what the interest payments are, the mandatory interest payments are, based on his finding. His finding is a generic, well, that's about right. But the interest is calculated based on the date of the arrearage. So some, you need to know whether he was finding a deficiency in 2014, 15, or 16, because it affects interest. And he didn't do that. And he didn't do that. Right, so we don't know based on his record. We have absolutely no ability to figure out on calculation. Let me just share, take your brain a little bit. I think the difficulty in this case is the settlement agreement called for $1,000 a month directly to her for child support. But there was no discussion or agreement about how the extracurricular expenses were to be split in the settlement agreement. I think there was a gentleman's agreement that outside of child support they would split the extracurricular activities. Then in February of 2013 that child support obligation, support obligation, was reduced to $9.58 per month. But again, no clarification of how they would decide who pays the extracurricular activities. So if, correct me if I'm wrong, the discrepancy here is we know he wrote checks in the amount of $69,318.67 directly to Petitioner, but we don't know how much of those checks represented extracurricular activities. If I might just make one small correction. Of the $69,318 that he put upon for her. And that's documented by checks and records? Yes, $49,929.50 was paid directly to Petitioner. Okay, and so that is the difference of 26,529, that isn't the correct amount. But the difference between $69,319.50 and $49,319.50 is perhaps extracurricular expenses? That wouldn't qualify as child support. It can't possibly all be extracurricular expenses. And again, this wasn't laid out. Was there a ladies' and gentlemen's agreement? It appeared, but it's certainly not laid out. Of the $20,000 that's in dispute, there are things like the money you pay for his mortgage, the money for the public, the money for the emancipated child's college tuition, the car payment. There are things in there that are clearly and absolutely not school expenses and extracurricular expenses. And part of that $20,000, those are some of the things that are in dispute in there as well. So it certainly isn't all. Those things that I just listed are certainly not school expenses or extracurricular expenses. Counsel's time is up. Thank you. Ms. Gretkowski? Can I start with a question of my own again, just add to the list? Everybody agrees that there's an arrearage of $133,905. Everybody agrees that that's the arrearage? No, ma'am. Okay. The $133,000 is how much should have been paid over the years. Okay, okay, okay. Thank you. Thank you. But there's an agreement as to where the line in the sand is? Yes. All right, and it starts with $133,905. And then the difference of opinion is what he paid directly to her, what amount that he paid directly to her represents child support? Well, I think that the direct date, as Ms. Gretkowski said, I think that the state's attorney's office agreed with certain direct payments of the $49,000. Okay, and the $26,529 to the SDU? Yes. Okay, now you can begin. I think we're starting on the same page. Okay, so first of all, Judge Bowman held that he was only giving credit for extracurricular and school expenses. So talking about car payments or pet or something, he specifically said, I'm only giving credit for school and extracurricular, and that's because of the deficit joint application. So he followed the provision of the marital settlement agreement in the dissolution judgment as to what he was not obligated, your client was not obligated to pay for. Okay, now let's go back to the marital settlement agreement. I'm somewhat confused. Did the agreement provide explicitly for payment to SDU? No, I didn't look at it recently. I think that Justice Wright has corrected. Nobody knows for sure, so we'll look at the record. So you think your understanding is it just says be paid to her. Correct. And then later on there was an order or request to SDU. Right. February 6, 2016, or February 6, 2013, I'm just reciting this so everybody can correct me later once you look at the record, by agreement of the parties, the trial court entered an order that support was reduced retroactively to May 21, 2012, down to $958 per month. And the payments directly after that date to SDU in $958. So it changed the process of paying and the amount of payment. Right. Something that I didn't talk about in my brief, what Judge Brown did is he asked attorneys to make a list of what these checks were for. And it's paid, the record, the capital record at one third. Most of these aren't in the record. For some reason Judge Homan had a private list of expenses. Had a what? A list of expenses. And so this isn't in the record, but it does show that he didn't need to go check on the check because he had the parties make it on the table. Well, that's where I was going before. You can't just walk in with a bushel basket full of paper, dump it on the bench, and say it's the judge's duty to sort it out. That's what lawyering is about. So why isn't that document in the record? Because it would assist us in evolving the evidence. We also don't have the post-trial memorandums in the record to review that were submitted to the court. So it makes our job a little harder to reconstruct his ruling. Can you reconstruct how he got to the $20,000? Do you have an idea? I'll try. No, no, I appreciate that. Anyway, I don't know a lot about the record. Did the trial judge ask for them? I don't know if it was Ms. Collins. She was one of the attorneys. Did the judge ask for them and Ms. Collins prepared them? And I didn't rely on it because they're not all in the record. But it just illustrates that he had more information than just the check. And so that's in there. So he had documentation, you're saying, that sorted the checks into categories that, pursuant to the Marital Settlement Agreement, were to be either given credit for or it was not his obligation. Correct? Correct. So like this one says, Barnstein, bedroom and funnel beds, 606. So he obviously didn't get credit for that because it's not his school record. Can you help us with the record and tell us what you're reading from? I'm reading from page – they weren't in the record, but – and I apologize that it wasn't complete, so I didn't rely on it. The court had them prepare – is that page C134? The court had Ms. Collins prepare a list of what the checks were for and then asked why we didn't have the check on check because they had this. This is the only one I can find in the record that I'll – Whose responsibility is it to prepare a record on appeal? The appellant. And to have a complete record? The appellant. And so any deficiency in the record is construed against, if any? Correct. The appellant? Correct. There is one in the record, but probably more than that. Okay. So there's an exemplar of what apparently was presented to Judge Brumman, either by agreement of the parties or he accepted it. Well, what happened is this, at page C130, we submitted the list and then the petitioner rejected it and attached it, and that's why it's in the record. That's why this one is, but they aren't all in the record. I'd like to talk about – well, I'd like to talk about interest in these cases. Well, first of all, counsel states that the parties are entitled to findings of fact and the petitioner doesn't say anything there. The court is required to give findings of fact for the items as damages. There's evidence in court of support that there was – that these expenses were paid. There was evidence where he could find – where he could look at it and decide it was okay, and so there isn't anything that requires an advantage trial that there be findings of fact. How can you calculate the interest if you don't know what payments are being credited at for what date? So what happened here is Judge Brumman granted a motion for direct authority on interest because he had trouble with how are you calculating interest. So they testified – I mean, a paralegal from the State's Attorney's Office testified that the State's Attorney's Office, the law firm's State's Attorney's Office, had taken an Excel program and manipulated it so that they could calculate interest. She was a paralegal and not really qualified to testify to the accuracy of the system, and nobody was brought in to testify to the accuracy of the system. And yes, Judge Brumman's discretion to whether he can trust their program. But does he have discretion to say they're not entitled to the statutory mandatory interest? Well, he would have discretion to say, I don't – under Rule 909, Rule of Evidence, he would have discretion to say that you're not – you are trying to tell me that you have a process at the State's Attorney's Office to calculate interest. But you're not – I can't tell – you know, he said, you know, Buzz, you did this. And, you know, he said, I can't tell that this is accurate because you guys did it. And I mean, you need to bring in somebody who is qualified to say that the program was flawed. Did he reject the evidence of interest? Yes, he did. And he's saying there's no foundation. Right. So it's an abuse of discretion. Right. Okay. And so he entered judgment based on the evidence that was properly admitted. Correct. The petitioner – the only remedy the petitioner seeks – Obviously, Sons interest. Correct. Okay. The remedy that the petitioner seeks is to remain in the trial court to make claims of that. And, again, that's not required that the court itemize damages. The only thing in the Civil Practice Act that requires an itemization of damages is when there's a jury trial for death or personal injury. Then the jury is required to itemize damages. There's no provision like that that applies and sort of shows that it's not required. The evidence supports it. And they don't really argue that there's no evidence to support it. The only remedy they ask for is just a remand for the findings of death. And that's not required. And Judge Brown's not going to mention it anyway. So if they did not ask for a new trial in their opening brief or in their notice of appeal, they mention a new trial in their 5th brief, but it's later. So I think that you could just affirm based on the findings of death when required. They're not arguing that no evidence supports it. And the judge exercised his discretion to say, you didn't show me that this process, that this program you have for interest is accurate. And that's my discretion as a trial judge to make that decision. Do you have a sense of what amount of interest is at issue? I think it's a judgment interest. So what that would be is 9% a year. This is going back to 2001. Isn't one twelfth of the amount of the arrearage at the end of each month? And so it's not 9%. I think it's a twelfth of the arrearage. And I don't know if I've determined in my mind if I've compounded then monthly or any additional arrearage that is calculated separately, which is why I think there was the development of this program. But it's the Will County State's, it turns out, the state of their own child support enforcement. And so the program or whatever that he didn't accept, is there I guess some base in the Civil Practice Act for experts to testify about interest? So it sounds like to me, Justice O'Brien, and you were talking about apples and oranges. She's talking about interest based on late payments, and you're talking about interest on the date of judgment. There wasn't a judgment in this case until 2015, I think. Is that correct? Are we talking about different calculations of interest? You said it was judgment interest, 9%. Justice O'Brien is talking about the statutory interest rate for late payments. I'll defer to Justice O'Brien. Okay. But this Will County program was allegedly able to calculate an arrearage interest at the appropriate rate. Yes, what? Was represented and Drummond basically said there's no foundation. Right. Okay. I want to talk a little bit about in the event that you demand this, to be like a proceeding in section 505 of the Constitution, because the statute says that when an order of requiring child support is paid, that is deemed to be an order creating a series of judgments that come into effect when the payment was due. And so because of that, it changes the process here. So according to the extension, a judgment was created every time the payment was due, whether or not it was paid. And a judgment was created without notice to the defendant, and the judgment was created without judicial input. And those are the three dependents. Was this argued in the trial court? No, it wasn't. Okay. So if it is remanded, couldn't you make that argument there? I suppose so. Okay. But it's in your brief, and you want us to consider it. Yes. Yep. I appreciate that. You're sitting on its face. Well, I said it's applied, but. Well, it's applied, but. Yeah. I mean, it really is. If you look at the money case that I cited in the state of Florida case, the state of Florida case said that in a case where there was a judgment entry for beverages that had gone through this dispersant unit. So there the dispersant unit sent notice that it was entering the judgment, and it came out. And the statute allowed that court to make a response. So the Supreme Court of Florida said that because there was notice that the judgment was entered, and because he had an opportunity to go to court if he wanted to, and an opportunity for hearing, that that would render it constitutional. But without those basics, it's not. Counsel is two minutes. Again. Okay. I just want to make sure I understand the issues. I don't think the SDU judgment or rearage is what the state is trying to enforce here. The state is trying to have the trial court recalculate everything, regardless of what the SDU says is due and owing. But that's my perception of the issue. So go ahead and correct me. Okay. What happened here is because of the series of judgments, the other telecourts have said that because payment is a defense, that the burden of proof shifts to the apple board. So that's part of the confusion here. So what can happen is the petitioner can bring the petitioner and just say, prove it. Prove what you paid. And that's all. And you make a series of judgments that have been created. And so you have the burden of proof. Also, because it's a series of judgments under the statute of limitations, they can go back to 2001. And I don't think they could without that statute. So how does the agreement by the parties that the amount due was $133,000 and some odd change, how does that affect your argument? There's an agreement that that's the amount. That's the agreement of the amount. There's just a way to do the math. That's an agreement of if you just look at how much is $1,000 in your 10, 12 years or something. It's not that we owe that. Because the state agrees that we can pay certain payments and they get credit for that. So that's just a way of doing math. It's a starting point. How much was he supposed to pay over this period of time? And then taking into account raising pay and things like that. So we didn't agree that he owes $133,000. How does that affect it? Thank you. Mr. Chuck. Thank you. So as it turns out, I had in my possession the judgment of dissolution from 2001. In Article IV, Child Support, Paragraph 4.1, common law record, page 385, says that the husband shall pay for the wife the sum of $1,000 for the support of the minor children. So, Justice Wright, I believe you have exactly right. The payment is to the wife. Could you say that again? I believe you're exactly right. And I have reviewed the judgment of dissolution as well. I have it here too. Thank you. So common law record, page 385 is what I'm looking at. I think at the end of the day, what this comes down to is Judge Brown just did not make payments effectively to the woman. We can't calculate what the interest is. We can't calculate what was supposed to happen. We can't calculate what was paid and what was not paid because the child support did not complete that. Did not make those payments. We don't know what the interest is. Justice O'Brien, I think your rendition of the way that the interest is calculated is correct. And, Justice Wright, I don't know how much interest, I can't tell you how much interest is at stake. Other than that, I do remember during that it was a lot. So, how is that precisely stated? But I believe that you're right. Well, what was the evidence as to the interest? So, when the state was trying to introduce their Exhibit D, they were going on $20,000 of payments that they had not accepted. And then the other payments, we had a total of $57,000 that we thought had not been paid. So we used the $20,000 of the student payments on the respondent's calculations, his presentation of checks and payments. And then the other $90,000 that there was no account for and tried to calculate based on that. It was, I mean, it was very much a ballpark figure. Obviously, we need findings to determine what credits were given and what credits were not given or allowed or not allowed. And then we can make a real calculation. I'm concerned the opposing counsel said that there was categorization of these checks into categories that, you know, were proper or, you know, would get credit for or not. Is that correct? Your Honor, there was certainly some, the respondent submitted his list of what were his payments. And then in that, there was a determination of we will accept these $49,000 of payments and not the other $20,000. So there was some distinction between those two. Some of it was some delineation of those two. She's not referring to things outside of the record. She's referring only to an exhibit that was attached to an objection that is in the record. She's been really careful about not discussing the other documents, I think. I want to defend her. She's tried. This record is difficult. This, I agree. This is a difficult record. And, again, thank you, Justice Breyer, for clarifying that. I appreciate your help. In any case, as far as the constitutionality is concerned, constitutionality of the statute is concerned, as Justice Breyer pointed out, this was not raised in the court of law. Another issue that could be raised is that this Court is being asked to review the first time, or not review, to decide for the first time. And, secondly, I can't quite help myself. I'll just make one argument on the merits. And that is, Respondent was present when the judgment of the solution was entered. He is on full notice that he was to pay $1,000 per month to do this ranking. He was on full notice of that. And now his argument is that it's unconstitutional that he was not given notice every time he was in contempt of that order. He knew that he was supposed to pay that. He knew what the law is. He knows that the interest is mandatory. He's presumed to know the law. And so he's expected to be put on notice that he was in contempt. And if he is going to be put on notice, then he and every other person in the family law court, every time they don't implement it, needs to have a separate hearing, separate notice. I mean, that is a pretty big burden on our system. But in conclusion, our position is simply this, that Judge Brumman did not make adequate comments to the fact that it was so arbitrary and so capricious. It was so random, $20,000, when that was not a number anyone in either party suggested was the appropriate number. Just pull that out and say, that's it. No, I won't give you any determination. I won't give you any specifics. I won't tell you where this came from. I won't calculate any of this, even though it's mandated by the statute. All of that, so arbitrary, so capricious, is to amount to $25,000 discretion. And we ask Judge Brumman to make proper comments. All right. I'm going to pick on you just a little bit more. For sake of the record, it's C-49 of the common law record, I think, is the order of withholding for support, reducing the child support to 958 and requiring the withholding order to be enforced through the SVU. So that's just for the record. Next, I could not find, and I do not believe, the supplemental briefs submitted to the trial court, the memorandums that could include some of this documentation. They're not in the record. Would you have any objection to supplementing the record if we so request, after we conference the case, with those memorandums submitted by both parties? Sorry, we have no objection. Okay. Hypothetically, then, if we agree that Judge Brumman didn't have to articulate findings of fact, and we accept his $20,000 amount, would you be satisfied if we remanded that for the trial court to calculate a rearage and make findings as to how that amount arose? In other words, we can't really do a do-over because the judge is retired. So could we put the burden on the trial court to calculate interest based on that $20,000 amount to figure out where it came from? So I think the problem with that solution is that no one can figure out where the $20,000 came from. Counsel for the respondent can't? Counsel for the commissioner can't? I don't know. I can't imagine how the trial court, who's sitting there now, somehow would be able to figure that out. So I don't think that's a viable solution. Okay. I appreciate your input. I suspect that the memorandums also discuss amounts of the rearages that don't match the $20,000 amount, but I want to triple check that. And I'm also guessing that, because I cannot put my finger on these memorandums myself, the contents of these memorandums myself at this moment, but I'm also guessing that the calculation of the rearages was based on things that we need findings to determine. Okay. Well, I appreciate your input on that remedy question. Thank you. There's one other thing I wanted to say. You may finish. Go ahead. Quickly. I'm sorry about that. I lost it. Okay. Anyway, thank you for asking me to send this back to the trial court. Oh, I know. The trial court, although it is a different trial trial, it's a different judge, the record is extensive. The judge can read through the record and pull up all the evidence and make determinations just based on the record. The record is so thorough, so complete, that the parties that put this trial on three times, each time it gets more and more sophisticated, more and more thorough. So if this court were to remand to the trial court, the new trial court could read through the record as it exists and make determinations based on that. I appreciate your input. Thank you. Thank you, all of you, for your arguments here today. This matter will be taken under advisement and a written decision will be issued to you as soon as possible.